Good morning. Good morning, Your Honors. Martin Nuvie on behalf of the petitioner. May it please the Court, I'd like to reserve three minutes for rebuttal, please. Your Honors, in this case, by failing to prepare and anticipate, prepare and investigate in anticipation of trial, failing to understand the evidence before him, failing to pursue a self-defense theory of defense despite compelling evidence to that effect, and by proffering an unconstitutional jury instruction, trial counsel abandoned Michael Wadsworth, my client, and left him at the mercy of the State's case, leaving the jury no option but to find him guilty of first-degree murder. Now, under Strickland, as you know, trial counsel has wide latitude in making strategic and tactical decisions, but the record of this case reflects, and I think conclusively proves, that there was no strategy or tactic involved in trial counsel's failure to present a self-defense theory of the case. In this case, the evidence was substantial prior and during trial that a self-defense theory was not only meritorious but needed. Well, let me take you back a little bit. You argue pretty vehemently about what counsel did bad in the State court. Let's talk a little bit about your motion for leave to file a Third Amendment complaint. District Court found it was not timely. Why was it timely? Well, it's not timely, but it relates back. Why does it relate back? Well, it relates back because there's a common core of operative facts. Well, just a minute. Even if the court had determined it timely, why doesn't that Third Amendment petition have to be dismissed because it was unexhausted claims at the time it was filed? Well, although they may have been unexhausted. Well, if they're unexhausted, then they can't relate back. Well— And that's the problem you have. You have unexhausted claims in your Third Amendment complaint. The district court says it isn't timely. Then after the district court says it isn't timely, then you're saying, no, they would have related back, but the bottom line is you don't really talk about why they relate back when they're unexhausted. The problem is that contained unexhausted at the time filed, and if they're unexhausted, they have to be dismissed anyway. Your Honor— You admit they're unexhausted. No, Your Honor. At the time— Tell us why you don't think they're— Well, at the time the motion was filed, at least one of the claims was technically exhausted. That would be the claim that— Technically. Technically. Tell us why you say technically, because I think that's pretty important. Which one and why was it technically exhausted? The ineffective assistance of counsel for proffering an unconstitutional jury instruction was technically exhausted, and it was technically exhausted because although there was no remedy in State court, there was no waiver to the default. Under Martinez v. Ryan, there was cause and potentially prejudice to argue that case. Your Honor, more— And did you argue that in your brief? Well, the district court did not deny our motion for leave to amend on the basis that the claims were unexhausted. It merely stated that the claims were untimely. Our argument today is that the district court abuses discretion in making that finding because they do, in fact, relate back. The standard that was imposed by the court in terms of what the operative facts need to be is extremely narrow and, Your Honor, in this case, inapplicable. If you look at the cases that were cited in all briefs, whether there be Mayles, Tiller, Nguyen, or Schneider, in all those cases, the operative fact is never determined to be the actual act or omission— in effect of a census of counsel claim, but it's rather a much broader concept. And that is consistent with the language in Rule 15 and the cases interpreted in Rule 15, which talk of occurrences, conduct. Okay. I've heard your— Go ahead. I'm sorry. Do you have a question about that? Yeah, because I thought you argued that you didn't previously raise this whole line because of Dixon. Well— Is that right? Well, Your Honor, there's no good reason why this wasn't previously raised by State Habeas Counsel or our office. However, the question is whether the claims relate back. And they do, unless you impose, again, an extremely narrow and constrictive interpretation of Rule 15 and what it means, what an occurrence or conduct mean. And that's not the case here. If you look at Schneider, which opposing counsel cites favorably in his brief, Schneider did not— Well, I guess I just want to pause here and ask you, was there any reason why you failed to raise these claims that you're talking about regarding the self-defense instruction earlier than the third amended complaint? Did you—because it doesn't seem like you specifically raised that until the third amended complaint. I'm trying to remember—I'm trying to figure out why. The claim I'm referring to was asserted in the third amended petition, yes. I know. Was it raised previous to that in the second one, in the first one? Okay. So the instruction is actually asserted in the original amended petition, which was timely. It was noted as part of the insufficiency of the evidence claim, which was claim number one. So it really wasn't—it really wasn't pled. It was just a notation in another claim pled. Well, it was noted and it was pled. But it was noted as part of the insufficiency of the evidence claim, and it was pled or strongly alluded to, I would argue, as part of the ineffective assistance of counsel for his choice of defense claim, which is claim 6b in the originally amended petition. And— Sorry. I didn't mean to interrupt you. No, Your Honor. It's quite okay. I was just going to try to go to this thing about the refusal of the instruction. Yes. It seems to me that under Nevada case law, courts are permitted to refuse to give instructions if the jury is properly instructed regarding reasonable doubt. Right. And I've found no United States Supreme Court decision that says that is clearly wrong. So at that point, if in fact there is no Supreme Court decision that suggests that is bad law, then how can I give you relief? Well, Your Honor, you're correct that you have to assess the totality of the jury instructions that were given to the jury. Well, in fact—and so therefore, at that point, it is as long as I can find that the jury has been properly instructed regarding reasonable doubt, which is exactly what the Nevada Supreme Court has said, then I'll have to not help you, right? Well, Your Honor, and that takes me back to the unconstitutional jury instruction. The jury was not properly instructed. Well, I understand what you're saying, but all I'm saying is Nevada law is pretty clear as to what they have to do. And Nevada interpreted their own law saying it was just plenty good and that those were very good reasonable doubt instructions. And the Supreme Court has never said the Nevada law is wrong. So me, giving et podeferens now, I'm stuck. That's what I'm trying to get you to help me with. Well, Your Honor, as I was stating, if you look at the totality of the jury instructions, you'll see that the— But Nevada says the notality does what's needed to be done. Right. Well, we believe that the Nevada Supreme Court— Was wrong. Unreasonably interpreted U.S. Supreme Court law. All right. Okay. So let's move to the next. How about Nevada state courts, did they unreasonably determine that Wadsworth was denied ineffective assistance accounts? That's the next question. Yes, Your Honor, I— Okay. Was there—it seems to me there is meaningful evidence to support a second shooter theory, right? Yes. Well, then how can it be clear that relying on a different defense would have produced any different result? Well, Your Honor, because there was substantial evidence of— Well, all you're suggesting is I've got enough evidence to go to the jury on a different theory, but there's absolutely meaningful evidence that went to the jury on the theory presented. And all you're saying is, let's second-guess this, everybody. Because you had some other theory you could have presented, that's the one you should have done, and you should have ignored the second shooter theory. That's not our argument, Your Honor. In our briefing and our pleadings, our argument is that the defenses were not inconsistent. Well, but the second shooter theory didn't work. It was your better theory. Right. You know. And so I think precisely it's not the type of thing—it's sort of like if you present an alibi defense— Right. —but then you want a self-defense theory, and the alibi defense doesn't work out, well, then it's—is it—you can't really claim—there really wasn't any evidence of self-defense. That's the problem. And—but now we know, in hindsight, that the second shooter theory didn't really resonate with the jury. But that's not really what—you can't build a case for relief on the basis that your theories didn't work out. You have to show that there's some evidence that self-defense was there, and I'm not seeing any. Our theory is that counsel was ineffective in presenting his theory of defense, both a second shooter and by failing to present a self-defense theory of the case. But at some point, you look ridiculous. It's sort of like if you say, well, my client wasn't there, you know, and I presented all this evidence that he wasn't there. But even if he was there, I think he—you should look at—you know, you should consider self-defense. Well, Your Honor, I don't believe that that is analogous to what occurred here. The evidence at trial was that my counsel shot a gun. He maintained that in his conversations with counsel at all times. And based on evidence that was vague or flimsy at best, and despite evidential limitations, counsel went alone on the— No, but counsel—the criminalist or the ballistics expert was really kind of awash. And so—and that was part of something else that was raised that, you know, he said, well, I can't say it was the—you know, I can't say it was the defendant's gun. It might have been. It might not have been. So that's good, you know, and that supports the second shooter theory. It supports— So it wasn't unreasonable for him to come up with that. It was unreasonable for him not to present a second self-defense theory of the case, Your Honor. And that—again, I believe that that is— Do you want to save time for rebuttal? Can I ask one question? Go ahead. I just want to make sure, what do you think was actually pled, then, regarding the self-defense jury instruction? I know there's a lot of overlapping claims here, but I want to know what you think was actually pled regarding the self-defense jury instruction. Do you mean in our brief? Yeah, in your amended— Okay, so in our timely amended petition, it was pled that counsel tendered a last-minute, eleventh-hour self-defense instruction, and that was pled as part of the first claim for insufficiency of the evidence. But more importantly, and this is the claim that I believe relates back to, it was pled that counsel was ineffective in failing to present a self-defense theory of the case. And as you know, Your Honor— Well, hold on, wait, Phil. So, correct, in the original petition, it says that counsel belatedly brought it, the self-defense jury instruction, not that it was brought incorrectly. Do you agree? I agree. Okay. So I just wanted to make sure, Clara. And so I guess I'm trying to figure out, because your brief focused on the Dixon, or that it was because of Dixon that you, it's what brought light to this for you, to bring up this sort of new claim or version of this claim. And it seems like you're only talking about Martinez in passing here in oral argument, so I'm trying to understand what it is that you were arguing in Dixon or why Dixon was so important to you. Well, you know, it came to light because the State argued that there was lack of prejudice as the instructions were not faulty or incorrect. They argued that in their answer to our petition for habeas. And that's what caused our office to come to the realization that there was an unconstitutional jury instruction. So it was argued as part of the prejudice element by the State, Your Honor. And the reason why it relates back to our ineffective assistance of counsel claim for his choice of defense is because a choice of defense is redundant, is insignificant without properly instructing the jury as to the law of that defense. Without a proper instruction, you might as well not present any evidence of that theory. So that's why it relates to or arises out of the same transaction or occurrence as a timely, originally amended claim. You said that happened in State habeas, in the State habeas petition? What, the? You were just arguing right now. Yes, no, that was part of the Federal petition. I guess I'm just trying to figure out why is all this coming up in the third amended complaint? Well, again, it was argued as part of the prejudice prong by the State in the sense that they argued that there was no prejudice because there were no incorrect instructions pled in the petition, Your Honor. So as part of the prejudice prong to our ineffective assistance of counsel for his choice of defense claim. And we replied to the answer noting that there was, in fact, an unconstitutional jury instruction. And what's going on with this jury instruction? This is not the first time I've seen this jury instruction. Is there a bad model instruction out there on the self-defense? Well, there was until 2014 when this court ruled that it was an unconstitutional jury instruction. And it's a troubling instruction, Your Honor, because it prevented the jury from finding Mr. Wadsworth guilty of anything but first degree murder as a result of the instruction on malice. Thank you. Did you have an additional question? No, I'm sorry. All right. Well, we've taken you over time, but I'll leave you one minute for rebuttal. Thank you, Your Honor. Good morning. May it please the Court, Jeffrey Conner on behalf of the respondents. Good morning, Your Honors. I think I'll try to get to some of the questions that the Court has answered, but I think I'd like to start by first addressing the issue respondents raised with respect to the certificate of appealability in this case. Gonzalez v. Staller is clear that the 2253C standards for granting a certificate of appealability are mandatory. Well, you challenged the sufficiency of the COA only after it was granted, but did not object when the application was filed. So why should this Court consider your challenge in light of Gatlin v. Matting, where we held that when the State fails to file a timely response to a motion for a COA, it is foreclosed from later arguing to narrow the certification? I think Gatlin is distinguishable from this circumstance, Your Honor. What my argument is based on with respect to the certificate of appealability is that the certificate of appealability on its face is deficient. We could not have raised that issue before the Court issued the order granting the certificate of appealability. It doesn't identify which claims in the petition actually meet the certificate of appealability standard, and for that reason, it's deficient on its face. And so setting that argument aside and moving to the merits, I think to you. Are you done with that argument on the COA? Yes. Okay. Then maybe let's jump to Dixon. Certainly. In Dixon, this Court found that the same erroneous self-defense instruction that was used in this case was prejudicial and reversed on that basis. Why should we not do the same here? Well, first of all, Your Honor, it's not part of the operative petition in this case. They raised the issue in a third amended petition when they sought leave. That issue did not come forward until after we had already briefed a motion to dismiss and answer, and they sought leave to file a third amended petition and raise that issue for the first time. Why don't these relate back? Why doesn't it relate back? I think the district court is directly correct on that point, that the question of whether that instruction is erroneous or not, which is a central operative fact, each of the proposed amendments is not an operative fact of any claim pled in the original petition or the amended petition. And so the district court was correct under the mill standard. Sotomayor, I guess what are the core operative facts that you think are relevant here? Well, the district court identified it, that there is an error in the instruction. And that's the only operative fact? That's not the only operative fact, but it is an operative fact of each of those claims, and it's not an operative fact of any claims that were raised in the first amended petition, the second amended petition, or the original petition. And under the mill standard in this Court's decision in Schneider, that therefore does not, the proposed amended claims do not relate back. Well, here, just walk me through it. Wadsworth raised, timely raised an argument that the trial counsel belatedly, right, that he was late in offering the self-defense instruction, correct? So the attorney offered the instruction. I guess why isn't that related back to the instruction? Why was that wrong? I don't know what part of the, how that's an, that is an operative fact of any of the claims that are raised in the prior pleadings. Well, it was a wrong instruction. This was an instruction. The error in the instruction has nothing to do with counsel's actual presentation of evidence related to that defense. Those are separate operative facts related to completely different legal theories. And they don't relate to each other in time or type. And so under the mill standard, they don't relate back. And to get to Your Honor's question about why this wasn't raised until the third amended petition, counsel conceded at the beginning of his argument that there was no good reason for them to not have raised it before. And the reason it didn't come out until then is when this, when the respondent was addressing the claim with respect to the rejection of his proposed instruction about the consideration of conflicting evidence, we let, or, you know, we responded to that by saying, look, you have not pointed to an error in the instructions that were given that has, that would potentially be cured by this proposed instruction. And then in their reply brief was when, for the first time, they raised this Dixon theory, which they cannot do under this Court's decision in Cacoperto v. Demosthenes. You cannot raise a new claim for the first time in a reply to an answer. And then it was at that point that they filed the motion for leave to amend and proposed the third amended petition. So that, I think, goes to Your Honor's question about why this wasn't raised until the third amended petition. And the argument that it was unavailable to them before Dixon was decided is just completely unsupportable. In Dixon, the Nevada Supreme Court acknowledged that the instruction in Dixon was wrong, and that case was decided before Mr. Wadsworth's direct appeal was decided. This claim was long available to them, and they just didn't raise it. And I think beyond the relation back issue, there are also other reasons why the district court didn't abuse its discretion in denying leave to amend. They had multiple opportunities to amend the petition. They didn't raise the claim. It's unexhausted. Now it's been procedurally defaulted in State court. Well, it also seems to me, and I guess I'd like you to comment, that these claims that are in the third amended complaint, even if the complaint was timely, they're unexhausted. Correct, Your Honor. You agree? Well, they were unexhausted at the time that he proposed the third amended petition. It does appear that Mr. Wadsworth has since gone back to State court, and the State courts have procedurally defaulted those claims. But the question of exhaustion is controlled by the status of the claim at the time of filing. That's what I wanted you to comment about. And this, you know, counsel now raises for the first time reliance on Martinez v. Ryan. I think this Court shouldn't consider that argument because it's either forfeited or waived. But even then, this raises an issue of significant disagreement in the District of Nevada right now about when technical exhaustion, where a claim has not been exhausted through fair presentation but would be procedurally defaulted on a return to State court, when that occurs. The thing is about, that's perhaps unique to Nevada, is that Nevada has exceptions to its procedural defaults that largely mirror the Federal exceptions. The only exception that exists in Federal court that does not exist in State court is the Martinez exception. Nevada has rejected Martinez's rationale, but there is a cause and prejudice exception and there is a fundamental miscarriage of justice exception. It is the Respondent's position that a Federal court should never assume that the Nevada courts will procedurally default a claim in light of those exceptions unless the Petitioner expressly concedes that he cannot meet either State exception. And the Nevada District Court has generally agreed with that and said that they will not technically find a claim technically exhausted unless the Petitioner basically concedes that his claim would need to be dismissed as procedurally defaulted, now with the exception of being able to meet the Martinez exception. And I think that raising that argument now, they could have raised that before and they didn't, so I think it's forfeited if not waived. If the Court has questions on the merits of any of the claims here, I'm happy to address any of that. Well, deal with the jury instruction. In general, deal with his jury instruction argument. The Dixon issue with respect to the self-defense instruction? Other than he only raised it in his reply brief. What is your answer? Certainly, Your Honor. I think even if this Court was to send that back to the – I mean, it probably would be better first addressed by the District Court, but I think it would certainly not be on the pale for this Court to conclude that the instruction here didn't really impact the outcome of the trial. There's no prejudice here because of the fact that there's a factual distinction between this case and Dixon. The reason I ask you about that is I'm really troubled. There's no question under Nevada case law, as long as the jury is properly instructed, there wouldn't be a problem. But given our subsequent law, now we've got a Nevada, if you will, the jury instruction from Nevada is not correct. It's unconstitutional. So therefore, what do I do about that? If it's not, if it isn't just, if you will, raised in the reply brief, how do I deal with it? That's my question. I think there's two different claims there, Your Honor. One is the rejection of his proposed instruction with respect to the consideration of conflicting evidence. That goes to whether or not the jury was properly instructed on the burden of proof and the presumption of innocence. There's no challenge here to those instructions. Those instructions were correct under Nevada law. And so the rejection of his instruction on the conflicting evidence stuff, there's no error there at all. Now, with respect to the Dixon issue, which is a separate issue about whether or not the jury was properly instructed on self-defense, I don't think there's a problem there in this case, and this is why. In Dixon, Dixon was only convicted of second-degree murder. And the error there about the reasonableness versus the unreasonableness of the belief or the need of self-defense is the drawing line between manslaughter and second-degree murder. In this case, we have a jury that's properly instructed on the elements of willful, premeditated, and deliberate first-degree murder. And the jury found that the State carried its burden of proof on those elements and convicted Mr. Wadsworth of first-degree murder. The error in the instruction on self-defense has nothing to do with the drawing line between second- and first-degree murder. It separates second-degree murder from manslaughter. So here, where the jury instructed, properly instructed on the elements of first-degree murder, found the defendant guilty of first-degree murder, this error in the instructions has no impact on that verdict. Well, aren't you also arguing that there was no evidence of self-defense, that the theory of the case was either a second shooter or first-degree? I think that also adds into the analysis here. When you look at the Estelle v. McGuire standard on an erroneous instruction kind of thing, that you have to look at the jury instructions as a whole and consider the, you know, what would the jury, you know, is there a reasonable likelihood that the jury's verdict is unconstitutional? And here, you know, I think Your Honor's right, that even if you got to the Bracht harmless error standard too, that there's really just not evidence to support the self-defense theory here. Wadsworth's friends were the initial aggressors in this case, and they were already running down the street and gone when Wadsworth fired his gun in the direction of the victim after he had first fired a warning shot into the air. And so there's no evidence here to support the necessity for self-defense. I have no other questions. We apparently don't have any additional questions. Thank you. I'll just ask that this Court affirm the district court, and we'll submit. Thank you, Your Honor. Thank you. Your Honor, going back to the Rule 15 standard, motions for leave to amend must be granted with extreme liberality. Here there were no repeated failures to cure deficiencies. The only amendment that was filed with legal court was the second amended petition. The first amended petition was filed as a matter of right. Second, there was no prejudice. Opposing counsel has not shown any prejudice to the respondents as a result of having to answer to these new claims, which are largely related to the timely claims. Third, there's no bad faith involved in this case. And fourth, it's not futile. The claims are not futile in this case.  Counsel admitted to it during the evidentiary hearing in state court when he said that he presented a self-defense instruction, which was unconstitutional, it's worth pointing out, when he stated he did so at the 11th hour as a result of the limitations imposed by the court. And finally, the claims relate back because they relate to the self-defense theory of the case, which was timely pleaded as an ineffective assistance of counsel claim. Thank you. Thank you both for your argument. This matter will stand submitted.
judges: Callahan, N.R. Smith, Murguia